**NOT FOR PUBLICATION**
UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

**FILED**

NOV 25 2025

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

CHRISTOPHER BRIGHTLY,

Plaintiff - Appellant,

v.

CORIZON INCORPORATED, named as
Corizon Health Incorporated, Health Care
Contractor at A.D.O.C. Tucson, Statewide /
"was"; CENTURION OF ARIZONA, LLC,
Health Care Contractor at A.D.O.C. Tucson,
Statewide; NATALIE BELL, N.P. /
Provider Medical Care at A.S.P.C. Tucson
Complex; NICK SALYER, Physician
Assistant Centurion at A.S.P.C. Tucson
Complex; JILLIAN RILEY, N.P. / Provider
Medical Care at A.S.P.C. Tucson Complex;
DOROTHY HINES, N.P. / Provider
Medical Care at A.S.P.C. Tucson Complex/
Douglas Comple; LAURA ELLIOTT, N.P. /
Provider Medical Care at A.S.P.C. Tucson
Complex; A. FERGUSON, AKA Alicia
Ferguson, F.H.A. Facility Health
Administrator at A.S.P.C. Tucson Complex;
ABLE SALAZAR, Centurion Site Medical
Director at A.S.P.C. Tucson Complex;
DAVID SHINN, Director, Arizona
Department of Corrections, Rehabilitation,
and Reentry, Director at A.D.O.C. Phoenix;

No. 24-7472

D.C. No.
4:21-cv-00127-JCH

MEMORANDUM[*]

---

\* This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

NAPHCARE, INC.; RYAN THORNELL,
Director of the Arizona Department of
Corrections, Rehabilitation,

    Defendants - Appellees.

Appeal from the United States District Court
for the District of Arizona
John Charles Hinderaker, District Judge, Presiding

Submitted November 21, 2025[**]
Phoenix, Arizona

Before: MURGUIA, Chief Judge, and HAWKINS and HURWITZ, Circuit Judges.

Christopher Brightly brings a 42 U.S.C. § 1983 action against prison healthcare providers and several of their employees alleging inadequate medical treatment while he was incarcerated in Arizona state prisons. He appeals a summary judgment order entered under Federal Rule of Civil Procedure 54(b) on his claims against Centurion of Arizona, LLC, and Laura Elliott, a Centurion nurse practitioner (collectively, "Defendants").

We have jurisdiction under 28 U.S.C. § 1291. "We review *de novo* the grant of summary judgment, and review pursuant to Federal Rule of Civil Procedure 56(c), under which the contested evidence is viewed in the light most favorable to the nonmoving party . . . ." *Johnson v. Barr*, 79 F.4th 996, 999 (9th Cir. 2023) (cleaned

---

[**] The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

up).

We affirm.

1. To prevail on his deliberate indifference claims, Brightly must show "harm caused by the indifference." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). Brightly argues that the district court erred in concluding that expert testimony was required to show a question of fact as to causation. He contends that because "the average person" knows that medication tends "to make patients better," a jury could conclude, without the benefit of expert testimony, "that if Elliott and Centurion chose not to follow specialists' recommendations and failed to provide consistent medication as prescribed, it could have caused [his] condition to worsen."

On this record, we disagree. As the district court noted, even assuming that Defendants failed to follow specialists' recommendations and inconsistently dispensed prescribed medication, it does not necessarily follow that Brightly's claimed complications were caused by these actions or omissions. The Defendants submitted expert testimony that Brightly's complications were not caused by a lapse of his antifungal medication and that it was "not even clear that" they were caused by a Valley Fever relapse. Instead, the expert opined that Brightly's hospitalizations could have been caused by "worsening stenosis, scarring, vascular impairment, infection of hardware (non-fungal) or a combination of the above." Indeed, one of Brightly's treating physicians opined that the complications likely resulted from

delay in diagnosing the disease, which occurred before Defendants undertook Brightly's care. The district court therefore did not err in applying the general rule that expert testimony is needed to show causation in complex medical cases. *See Hutchinson v. United States*, 838 F.2d 390, 393-94 (9th Cir. 1988); *United States v. Urena*, 659 F.3d 903, 908 (9th Cir. 2011).

2. In the alternative, Brightly argues that the testimony of two treating physicians, Drs. Sewell and Avila, raises a triable question of fact on causation. Brightly does not contest the district court's finding that Dr. Sewell, a family medicine practitioner, was not a Valley Fever expert. Instead, he contends that because the district court relied on Dr. Sewell's opinion in issuing a preliminary injunction, it must also do so at the summary judgment stage. But the district court never found Dr. Sewell to be a qualified expert on causation. Moreover, the court was not required to rely on evidence at summary judgment simply because it did so when issuing a preliminary injunction. *See Herb Reed Enters. LLC v. Fla. Ent. Mgmt., Inc.*, 736 F.3d 1239, 1250 n.5 (9th Cir. 2013) ("Due to the urgency of obtaining a preliminary injunction at a point when there has been limited factual development, the rules of evidence do not apply strictly to preliminary injunction proceedings.").

Brightly also argues that Dr. Avila could provide the required testimony because a treating physician may testify as to causation "to the extent that his

opinions were formed during the course of treatment." *Goodman v. Staples The Off. Superstore, LLC*, 644 F.3d 817, 826 (9th Cir. 2011). But even assuming Dr. Avila's opinions were formed during treatment, she did not opine that the Defendants' actions and omissions caused Brightly's complications. Rather, she concluded:

> While it is concerning that Mr. Brightly's treatment course was interrupted during the above-mentioned time, it is my professional opinion that the severity of the patient's case is more likely due to a delay in his diagnosis of Coccidiomycosis meningitis. If the patient had been brought to medical attention for more prompt diagnosis and initiation of treatment, he likely would not have experienced such a devastating and complex infection.

The delay in diagnosis occurred before Centurion and Elliott assumed Brightly's care.

**AFFIRMED.**